**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| BRIGHTVIEW LANDSCAPES, LLC | : | |
| | : | |
| Plaintiff, | : | Civ. Action No. _______________ |
| | : | |
| v. | : | |
| | : | |
| PETER SACCO and RIVERVIEW LANDSCAPES, LLC | : | |
| | : | |
| Defendant. | : | |

**VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff BrightView Landscapes, LLC ("BrightView"), by and through its undersigned counsel, and for and in support of its Complaint against Defendant Peter Sacco ("Sacco") and Riverview Landscapes, LLC ("Riverview," and with Sacco, "Defendants"), hereby avers as follows:

## I. Introduction

1. BrightView is one of the nation's leading commercial landscape companies. It provides a wide array of landscaping and maintenance services, including, but not limited to, landscaping design; landscaping maintenance; snow and ice removal; water and irrigation services; and tree care. Its customers include corporate campuses, sports stadiums, museums, universities, casinos, amusement parks, public parks, private homeowner associations, and many other public and private businesses.

2. Sacco was an Account Manager who worked for BrightView in a territory located in Albany, Schenectady, Saratoga, Warren, and Rensselaer Counties of New York (the "Restricted Territory"). In his customer-facing role, Sacco worked to bring new business to BrightView,

whether by engaging new customers or by expanding the work that BrightView did for existing customers.

3. Sacco's role within the company made him privy to wide range of confidential information that BrightView uses to succeed in the highly competitive commercial landscaping industry.

4. The confidential information that Sacco knows includes the identities of the precise individuals at BrightView's customers who make purchasing and contracting decisions; the annual spend of its customers; service issues, if any, that such customers may be encountering; BrightView's labor costs; BrightView's project estimator model; BrightView's pricing; and BrightView's target profit margins.

5. In connection with his promotion to Account Manager and the accompanying increase in compensation, Sacco signed BrightView's Confidentiality, Noncompetition, and Nonsolicitation Agreement, effective as of August 8, 2016 ("Agreement"). A true and correct copy of the Agreement is attached hereto as Exhibit A.

6. Sacco's Agreement with BrightView contains several restrictive covenants to protect BrightView's legitimate interests. Among them, the Agreement provides that, for one year following the termination of his employment with BrightView, Sacco may not be employed by or participate in any manner with a "Competing Business" in his "Restricted Territory" where doing so will require Sacco "to provide the same or substantially similar services." *See* Agreement at § 5.

7. Sacco's Agreement also restricted Sacco from soliciting BrightView's customers for which Sacco had "Material Business Contract" in the preceding two years for a period of one year following the termination of his employment. *Id.* at § 6.

8. On February 10, 2025, BrightView terminated Sacco's employment for cause because Sacco operated a BrightView vehicle in an unsafe manner, causing an accident that destroyed the BrightView vehicle.

9. Sacco has accepted employment with Riverview Landscapes, LLC ("Riverview"). Riverview is a direct competitor to BrightView.

10. BrightView understands that Riverview has assigned Sacco to service the Restricted Territory as defined by the Agreement to perform the same or substantially similar services on behalf of Riverview that Sacco performed for BrightView.

11. Additionally, BrightView understands Sacco has solicited BrightView customers, including the Daughters of Sarah and Saratoga Lofts; BrightView lost its contract with Daughters of Sarah after Sacco's solicitation.

12. Despite demand for compliance with the restrictive covenants set forth in the Agreement, Sacco continues work for Riverview in a manner and in a location that puts him in breach of contract.

13. Sacco's breach of contract threatens BrightView with irreparable injuries relating to the loss of its goodwill and the misuse and disclosure of BrightView's confidential information.

14. BrightView therefore brings this action to enforce its rights and to protect its goodwill and confidential information.

## II. <u>The Parties</u>

15. BrightView is a limited liability company organized under the laws of the State of Delaware. BrightView's principal place of business is located at 980 Jolly Road, Blue Bell, Pennsylvania 19422. BrightView's member is BrightView Holdings, Inc., a Delaware corporation.

16. Sacco is an individual residing in Malta, New York.

17. Riverview is a limited liability company registered in the State of New York.

18. Upon information and belief, Riverview is not a citizen of the state of Delaware. Prior to filing this complaint, BrightView reviewed public filings and dockets to determine whether Riverview was a citizen of Delaware and uncovered no information indicating Riverview was a Delaware citizen. Further, BrightView communicated with counsel for one of the owners of Riverview to determine Riverview's citizenship. Prior to the filing of this Complaint, counsel did not respond to that inquiry.

## III. <u>Jurisdiction and Venue</u>

19. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

20. The Agreement provides that "[t]he parties agree that any and all actions or proceedings by BrightView to enforce this Agreement may be brought in the State and/or Federal Courts located in or serving Rockville, Maryland." *See* Agreement at § 12.

21. Venue is proper in this district pursuant to 28 U.S.C § 1391(b)(2) because it is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred—namely that the Agreement was negotiated and accepted in Maryland—and because Sacco is subject to the Court's personal jurisdiction pursuant to the Agreement.

22. The Agreement also provides that "[e]ach party waives any right it may have to assert the doctrine of forum non conveniens . . . or to object to venue" and "stipulates that the State and Federal courts located in or serving Rockvillew, Maryland shall have in personam jurisdiction

and venue over each of them for the purpose of litigating any dispute, controversy, or proceeding arising out of or related to this Agreement." *See* Agreement at § 12.

## III. Factual Background

### A. BrightView's Business.

23. BrightView is a landscaping business that traces its roots back to 1939. Today, BrightView provides a range of landscaping and maintenance services throughout the United States.

24. BrightView helps its customers design landscapes that are both beautiful and functional. Once designed, BrightView develops and implements the projects to turn the designs into reality.

25. BrightView also maintains its customers' landscapes, and its maintenance services are extensive. They include fertilization, lawn care, tree care, weed and pest management, storm preparedness, water and irrigation management, and snow and ice removal services.

26. BrightView serves many different markets. Its customers include corporate campuses, sports stadiums, retail shopping centers, places of worship, museums, universities, casinos, amusement parks, public parks, private homeowner associations, and many other public and private businesses.

27. In short, BrightView is a national business providing extensive landscaping and maintenance services to customers engaged in a diverse array of businesses.

### B. Sacco's Employment with BrightView.

28. Sacco began his career with BrightView in 2007.

29. Sacco was promoted to Account Manager on or around August 8, 2016, the date that he executed the Agreement. Sacco was required to execute the Agreement as a condition of his promotion and increase in compensation.

30. As an Account Manager, Sacco was the "face" of BrightView with its customers.

31. In the role of Account Manager, Sacco was responsible for client satisfaction. He was expected to develop and maintain long-term relationships with clients, to perform site walkthroughs to ensure that quality and service expectations were being met, and to facilitate the resolution of client concerns to ensure renewal.

32. As an Account Manager, Sacco was responsible for understanding BrightView's customers' needs, preferences, and pricing. Thus, Sacco's role within the Company made him privy to a wide range of confidential information that BrightView uses to succeed in the highly competitive commercial landscaping industry.

33. The confidential information that Sacco knows includes the identities of the precise individuals at BrightView's customers who make purchasing and contracting decisions; the annual spend of its customers; the customers' landscaping and snow removal needs and preferences; BrightView's labor costs; BrightView's pricing; and BrightView's target profit margins.

34. To help him do his job as an Account Manager, BrightView gave Sacco extensive training—both formal and on-the-job—to become an effective salesperson, including training courses on developing proposals, handling objections, disqualifying prospects, and closing sales.

35. Sacco was also intimately familiar with BrightView's proprietary method of estimating costs and setting pricing for customer projects or maintenance contracts, and he knew BrightView's target profit margins for customer bids.

**C. Sacco's Agreement with BrightView.**

36. Given the extensive goodwill with customers of and customer prospects for BrightView, with which Sacco was entrusted in connection with his promotion to Account Manager—along with the tremendous amount and significant sensitivity of confidential and proprietary business information that was shared with Sacco and to which he was given access—BrightView required him to execute the Agreement as a condition to receiving his promotion to Account Manager and increase in compensation.

37. In Section 3 of the Agreement, Sacco agreed that he would not use or disclose BrightView's "Confidential Information" except on behalf of BrightView and in furtherance of its business:

> **<u>Non-Disclosure and Non-Use of Confidential Information and Trade Secrets</u>.** During the term of team member's employment and following the voluntary or involuntary termination of team member's employment for any reason with or without cause, team member will not, except as authorized and required to perform team member's duties for BrightView, directly or indirectly: use, disclose, reproduce, distribute, or otherwise disseminate BrightView's Confidential Information and Trade Secrets, or take any action causing or fail to take any action necessary, in order to prevent any such information to lose its character or cease to qualify as Confidential Information or a Trade Secret. . . This prohibition applies regardless of whether the Confidential Information or Trade Secret was acquired before the effective date of this Agreement or thereafter.

*See* Agreement at § 3.

38. The Agreement defines the term "Confidential Information" in pertinent part as follows:

> **"Confidential Information"** means (i) competitively sensitive information, (ii) of importance to BrightView, and (iii) that becomes known to team member through his or her employment with BrightView, and (iv) that is not a trade secret under the Maryland Uniform Trade Secrets Act or other applicable law, as trade secrets are and shall remain separately protected and enforceable pursuant

> to applicable law. Assuming the foregoing criteria are met, Confidential Information includes, but is not limited to, information about BrightView's operations or services, names and other listings of current or prospective Customers, proposals to any current or prospective Customers, including payment and pricing information, the implementation of Customer-specific projects, the composition or description of future services that will or may be offered by BrightView, marketing strategies, financial and sales information, and technical expertise and know-how developed by BrightView, including the unique manner in which BrightView conducts its business. Confidential Information also includes information disclosed to BrightView by any third party (including, but not limited to, current or prospective Customers) that BrightView is required to treat as confidential. . . .

*See* Agreement at § 1(c).

39. In Section 5 of the Agreement, Sacco agreed that he would not compete with BrightView for one year in a limited geography upon the termination of his employment with BrightView:

> **Non-Competition.** Team member agrees that during team member's employment and for a period of one (1) year following the voluntary or involuntary termination of team member's employment for any reason and with or without cause, team member will not, directly or Indirectly, own, manage, operate, join, control, be employed by or with, or participate in any manner with a Competing Business anywhere in the Restricted Territory where doing so will require team member to provide the same or substantially similar services to a Competing Business as those that team member provided to BrightView while employed.

*See* Agreement at § 5.

40. The Agreement defines a "Competing Business" as "any individual (including team member), corporation, limited liability company, partnership, joint venture, association, or other entity, regardless of form, that is directly engaged in whole or in relevant part in any business or enterprise that is the same as, or substantially the same as, any part of the Business of BrightView, or that is taking material steps to engage in such Business." *See* Agreement at § 1(b).

41. The "Business of BrightView" is defined in the Agreement as "providing landscape and snow and ice services to Customers throughout the United States and abroad, including landscape and sports turf design, construction, maintenance, and enhancement, tree care, water management and irrigation, and snow and ice removal and management." *Id.* at § 1(a).

42. The Agreement defines the "Restricted Territory" as "the geographic territory in which team member worked, represented BrightView, or had Material Business Contact with BrightView's Customers in the two (2) year period preceding the voluntary or involuntary termination of team member's employment with BrightView for any reason and with or without cause." *See* Agreement at § 1(g). The geographic territory Sacco serviced was the following New York counties: Albany, Schenectady, Saratoga, Warren, and Rensselaer.

43. "Material Business Contact" means "contact that is intended to establish or strengthen a business or professional relationship for BrightView, regardless of whether the contact is with a Customer directly assigned to team member or a Customer with which team member otherwise has contact in furtherance of the team member's job duties." *See* Agreement at § 1(f).

44. In Section 6 of the Agreement, Sacco promised that he would not solicit BrightView's "Customers":

> **<u>Non-Solicitation of Customers</u>.** Team member agrees that during team member's employment for a period of two (2) years following the voluntary or involuntary termination of team member's employment for any reason and with or without cause, team member will not, either on behalf of team member or for any Competing Business, directly or Indirectly solicit, divert, or appropriate, or attempt to solicit, divert, or appropriate any Customer or accept any business from any Customer with whom team member had Material Business Contact in the two (2) year period preceding the termination of team member's employment, for the purposes of providing services that are the same as or substantially similar to those provided in the Business of BrightView.

*See* Agreement at § 6.

45. The Agreement defines "Customer" as "those individuals, companies, or other entities for whom BrightView has provided or does provide products or services in connection with the Business of BrightView or to whom BrightView has provided written proposals concerning the Business of BrightView in the two (2) year period preceding the voluntary or involuntary termination of team member's employment with BrightView for any reason and with or without cause." *See* Agreement at § 1(d).

46. In the Agreement, Sacco agreed that his restrictive covenants were reasonably designed to protect BrightView's legitimate interests in protecting its goodwill and Confidential Information, and further, that any breach of the restrictive covenants would cause BrightView serious and irreparable injuries for which injunctive relief is the appropriate remedy:

> **Relief, Remedies, and Enforcement.** The parties acknowledge that BrightView is engaged in a highly competitive business and the covenants and restrictions contained in this Agreement, including the geographic and temporal restrictions, are reasonably designed to protect BrightView's legitimate business interests, including Company goodwill and Customer . . . relationships, Confidential Information and Trade Secrets, and the specialized skills and knowledge gained by team member . . . during their employment. Team member acknowledges and agrees that a breach of any provision of this Agreement by the team member will cause serious and irreparable injury to BrightView that will be difficult to quantify and which may not be adequately compensated by monetary damages alone. Thus, in the event of a breach or threatened or intended breach of this Agreement by team member, BrightView shall be entitled to injunctive relief, both temporary and final, enjoining and restraining such breach or threatened or intended breach . . . .

*See* Agreement at § 13.

47. In the Agreement, Sacco also agreed that Sacco's "knowledge, skills, and abilities he . . . possesse[d] at the time of commencement of employment are sufficient to permit team

member to earn a livelihood satisfactory to team member without violating any provisions of Section 3 through 10" of the Agreement." *See id.*

**D. BrightView's Customer Relationships.**

48. BrightView maintained substantial relationships with its customers serviced by BrightView in the Restricted Territory.

49. BrightView also enjoyed a substantial relationship with the Daughters of Sarah.

50. BrightView's relationship with Daughters of Sarah generated thousands of dollars in revenue and profit for BrightView and Sacco was responsible for servicing BrightView accounts worth hundreds of thousands of dollars during his employment with BrightView.

51. Daughters of Sarah was a Customer within the Restricted Territory.

**E. Sacco's Breaches of Duties to BrightView.**

52. On February 10, 2025, BrightView terminated Sacco's employment for cause because Sacco operated a BrightView vehicle in an unsafe manner, causing an accident that destroyed BrightView's vehicle and resulted in Sacco's arrest.

53. After the termination of his employment, BrightView learned that Sacco accepted employment with Riverview in the Restricted Territory providing the same or substantially similar services that he previously provided to BrightView.

54. Riverview describes itself as "a full-service landscaping company specializing in landscape maintenance, grounds enhancement, and snow & ice management services." *See* Riverview's Website, www.riverviewco.com, attached hereto as Exhibit B. Riverview provides such services within the geography encompassed in the Restricted Territory.

55. Riverview is a Competing Business as defined by the Agreement.

56. BrightView also learned that Sacco solicited business from two Customers of BrightView on behalf of Riverview after his termination: Daughters of Sarah and Saratoga Lofts. BrightView has lost its contract with Daughters of Sarah. BrightView believes that that Sacco is soliciting, servicing, or accepting business other BrightView Customers in violation of the Agreement, but is presently unaware of the number of Customers.

57. Given that Sacco accepted a job with a Competing Business in order to provide the same or substantially similar services as those that he performed for BrightView and solicited BrightView's customers, BrightView sent Sacco correspondence to demand certain information and assurances relating to compliance with his restrictive covenants. A true and correct copy of the letter from Jonathan S. Krause to Sacco is attached hereto as Exhibit C ("Demand Letter").

58. Sacco never personally or through counsel responded to the Demand Letter.

59. Instead, Riverview, through counsel, responded to BrightView. Riverview's response did not provide the information requested in the Demand Letter or confirm that Sacco would abide by the restrictive covenants contained within the Agreement. Upon information and belief, Sacco remains employed by Riverview in a fashion that will cause him to continue to breach his restrictive covenants with BrightView.

60. Sacco has breached the Agreement by, among other things, becoming employed by Riverview in a Restricted Territory in a manner that requires him to provide the same or substantially similar services for Riverview that he provided to BrightView during the last two years of his employment at BrightView and that will result in the use or disclosure of BrightView's Confidential Information. *See* Exhibit A, §§ 3, 5.

61. Sacco also breached the Agreement by soliciting BrightView Customers in violation of Section 6 of the Agreement.

62. Unless enjoined, Sacco will continue to breach obligations owed to BrightView under the terms of the Agreement.

63. BrightView needs the protections set forth in the Agreement for it to replace Sacco and introduce that replacement to BrightView's customers without improper solicitation and interference by Sacco; to allow the good will Sacco earned on behalf of BrightView to be transferred to new BrightView personnel; and to all Sacco's memory and knowledge of BrightView's and BrightView's customer's Confidential Information to fade and such information may grow stale.

64. Riverview will receive a tremendous unfair competitive advantage if Sacco is permitted to disregard the confidentiality, non-competition, and non-solicitation provisions of the Agreement.

65. Riverview would be, essentially, free-riding on BrightView's investment in the goodwill of its customer base, defeating the purpose of the provisions of the Agreement

66. Absent injunctive relief, BrightView will suffer further irreparable harm through Sacco's flouting of the Agreement.

67. BrightView has sustained, and will continue to sustain, serious and substantial injuries for which there is no adequate remedy at law.

68. The damages incurred by BrightView through Sacco's above-described conduct, including the solicitation and servicing of BrightView customers, are in excess of $75,000.00.

**Count I**
**BrightView v. Sacco**
**Breach of Contract**

69. BrightView incorporates by reference the preceding allegations as if fully set forth herein.

70. BrightView and Sacco are parties to the Agreement, the Agreement is supported by consideration, and the restrictive covenants set forth therein are ancillary to the Agreement.

71. Sacco's employment was terminated by BrightView on February 10, 2025 for cause because his unsafe operation of a BrightView vehicle resulted in Sacco's arrest after an accident that destroyed the BrightView vehicle.

72. Sacco is currently employed by Riverview.

73. Riverview is a Competing Business under the Agreement.

74. Sacco's duties for Riverview are the same or substantially similar to those he had at BrightView, including the charge to find customers to purchase landscape maintenance and snow and ice removal services.

75. Upon information and belief, the services that Sacco is providing for Riverview is resulting, or will result in, the use or disclosure of BrightView's Confidential Information.

76. Sacco has directly or Indirectly (as defined by the Agreement) (a) solicited, diverted, or appropriated, (b) attempted to solicit, divert, or appropriate, or (c) threatens to solicit, divert, or appropriate one or more Customers with whom Sacco had Material Business Contact during the last two years of his employment with BrightView.

77. Sacco has been assigned to work and is continuing to work for Riverview in the Restricted Territory, which includes, Albany, Schenectady, Saratoga, Warren, and Rensselaer Counties in New York.

78. By virtue of the foregoing actions, Sacco has breached, and continues to threaten to breach, the non-competition, non-disclosure, and non-solicitation restraints that are set forth in Sections 3, 5, and 6 of the Agreement.

79. The non-competition, non-disclosure, and non-solicitation restraints that are set forth in Sections 3, 5, and 6 of the Agreement are reasonable in duration, geographic, and substantive scope.

80. The non-competition, non-disclosure, and non-solicitation restraints that are set forth in Sections 3, 5, and 6 of the Agreement are no greater than necessary to protect legitimate interests of BrightView, including, but not limited to, its interests in protecting its goodwill and its Confidential Information.

81. As a result of the foregoing breaches of the Agreement, BrightView has sustained, and will continue to sustain, damages.

82. Unless Sacco is enjoined from the foregoing conduct, BrightView will be irreparably harmed by the loss of goodwill, the disclosure and use of its Confidential Information, the loss of the benefit of its investments, and present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

83. In the Agreement, Sacco agreed that BrightView would be irreparably harmed by his breach or threatened breach of the Agreement and that, therefore, BrightView is entitled to injunctive relief and any other equitable relief allowed by law. *See* Agreement at § 13.

84. In the Agreement, Sacco agreed that his knowledge, skills, and abilities are sufficient to permit him to earn a livelihood satisfactory to him without violating any provision set forth in Sections 3, 5, and 6 of the Agreement. *See* Agreement at § 13.

85. The balance of equities and public interest factors favor BrightView.

**Count II**
**BrightView v. Riverview**
**Tortious Interference with Contractual Relationship with BrightView**

86. BrightView incorporates by reference the preceding allegations as if fully set forth herein.

87. BrightView and Sacco are parties to the Agreement.

88. Upon information and belief, Riverview was aware of Sacco's agreement with BrightView through Riverview's experience in the market and understanding of BrightView's use of restrictive covenants to protect its confidential information, trade secrets, and customer relationships. Nonetheless, through the Demand Letter, if Riverview was not aware of the restrictive covenants upon Sacco, it became aware of them after he was hired and continued to employ him in a manner that causes Sacco to breach the restrictive covenants in the Agreement.

89. Upon information and belief, Riverview intentionally, with malice or reckless indifference to BrightView's rights, induced Sacco to breach the Agreement by promising Sacco employment with Riverview in direct competition with BrightView and to solicit, divert, appropriate, or accept business from BrightView's Customers.

90. Riverview's conduct is outrageous and taken willfully, with malice, and/or reckless indifference to BrightView's rights such that BrightView is entitled to recover punitive damages.

91. As a direct and proximate result of the foregoing, Riverview has caused or will cause damage to BrightView in an amount to be determined at hearing or trial of this matter, including, but not limited to, a loss of customers, lost profits, and additional expenses or damages including attorneys' fees and costs in pursuing this action.

92. As a direct and proximate result of the foregoing conduct, Riverview has caused BrightView to suffer substantial and irreparable harm to its business and economic interests for

which monetary damages are an inadequate remedy and which warrant the imposition of preliminary and permanent injunctive relief.

**Prayer for Relief**

WHEREFORE, BrightView demands judgment in its favor against Defendants, together with the following relief:

A. an order granting preliminary and permanent injunctive relief to enjoin the use or disclosure of BrightView's Confidential Information as required by Section 3 of the Agreement;

B. an order granting preliminary and permanent injunctive relief to enjoin Sacco, for one year, from engaging in conduct in breach of the non-competition covenant set forth in Section 5 of the Agreement, including, but not limited to, an order prohibiting Sacco from providing the same or substantially similar services for a Competing Business in the Restricted Territory as those that Sacco provided for BrightView;

C. an order granting preliminary and permanent injunctive relief to enjoin Sacco, for two years, from engaging in conduct in breach of the non-solicitation covenant set forth in Section 6 of the Agreement;

D. an order granting preliminary and permanent injunctive relief to enjoin Riverview from employing Sacco to provide the same or substantially similar services that he provided to BrightView in the Restricted Territory in violation of the Agreement;

E. an order granting preliminary and permanent injunctive relief to enjoin Riverview from employing Sacco to solicit Customers in violation of the non-solicitation covenant set forth in Section 6 of the Agreement;

F. an order granting preliminary and permanent injunctive relief to enjoin Riverview from encouraging, assisting, or providing Sacco support to violate the Agreement

G. an award of damages for such actual losses as may be proven at trial;

H. an award of attorneys' fees, costs, and interest as permitted by law; and/or

I. such other and further relief as this Court deems just and equitable.

Dated: June 27, 2025

Respectfully Submitted:

**KLEHR HARRISON HARVEY BRANZBURG LLP**

*/s/ Scott A. Levin*
Scott A. Levin (I.D. No. 2109080013)
Jonathan S. Krause (Pa. ID No. 93817) (*pro hac forthcoming)*
Gregory R. Sellers (Pa. ID No. 316273) (*pro hac forthcoming)*
1835 Market Street, Suite 1400
Philadelphia PA, 19103
Phone: (215) 569-2700
slevin@klehr.com
jkrause@klehr.com
gsellers@klehr.com

*Attorneys for Plaintiff BrightView Landscapes LLC*

**VERIFICATION**

I, David Palmer, declare as follows:

1. I am employed by BrightView Landscapes, LLC ("BrightView") as Vice President General Manager. I am authorized to make this verification on behalf of BrightView.

2. I have personal knowledge and have, through my position at BrightView, obtained knowledge of the facts set forth in the foregoing Verified Complaint for Injunctive Relief and Damages (the "Verified Complaint").

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Verified Complaint are true and correct, to the best of my knowledge, understanding, and belief. 28 U.S.C. § 1746.

Dated: 6/26/2025

David Palmer